Mr. Williams pled guilty to three counts of being a felon in possession of a firearm. He contends that his defense counsel was not provided a meaningful opportunity to be heard at sentencing. Counsel, I'll just cut to my concern on the case. I mean, what was counsel prohibited from saying here? Because, you know, I get it when the sentencing hearing starts, things don't go well, go off the rails, at least from defense counsel's perspective. At some point the district court judge, however that was said, invites counsel to make argument. Your opening brief says we have no idea what may have been argued there. For me, I struggle with that, right? And then at the end, when you have the district court kind of summing up prior to imposing sentence, you have this sort of, I understand, thank you, you made good points, I understand that he has some intellectual challenges. Isn't that the whole thing that you wanted, I'm sorry, not you, but defense counsel wanted to get out? And so I get it if the transcript had ended early on, you might have a much stronger case, but I just struggle to get there when I read the whole thing. Okay, there's a lot in your question. The first thing I would point out is that this error is preserved. Abuse of discretion, so it has to, the government's burden. That's contested, right, but I take your point. It's contested, but United States v. Scherer is right on point, and that's a panel decision here that controls. So a couple things. She mentioned that she also wanted to talk about exhibits, and the big factor was the school records. So the judge heard about school records saying he was educably mentally retarded, but he did not hear, and I think this is very important, and I'm looking at page 94 of the appendix that I filed. When the government expert gave testimony at the competency hearing, she said there was a discrepancy in the record, and she didn't consider that page where it says he's educably mentally retarded. She said that she didn't think that they got the age correct on that, and that didn't factor into her decision, but if you look at that document, there's the exact same name, first, middle, and last. They're the same date of birth, and there's a student number that matches the student number on all of the Kansas City, Missouri records. So if one expert is drawing this conclusion of malingering, and this man is perpetrating a fraud on the court, but she's not considering the key piece of evidence, that should matter, because we're no longer in a competency determination situation. We're in, does intellectual deficit pose any grounds for mitigation? Two other pages in the record I think she may have been trying to point to in the records. In 2015, the mental health place was called Wingspan. This is in the appendix at page five. Quote, Byron clearly displays some cognitive deficits. He is a mentally challenged young man. But didn't the district court acknowledge that prior to imposing sentence? No, not that one. I mean, it didn't reference a record, but the district court drew the conclusion that those support, and that is, I forget, intellectual difficulties or something along those lines was the language. I think my question is, didn't the court know all that? And this is the judge, the district court judge that had done the competency hearing, had looked at the evidence, and had drawn the conclusion that it seems to me that trial counsel was trying to get in front of the judge, and eventually did get in front of the judge. Well, I think there's a big difference between the judge saying there may be some intellectual disability, but then the words immediately after that were, but that's not what this is about. Well, sentencing is about mitigation. You may want to rule it out and say, well, competency already decided all of this, but it doesn't. For example, I believe it's Hall versus Florida. Can't find the citation. It specifically talks in there about individuals with intellectual disability do not have the capacity sometimes to learn from past mistakes. They don't have the calculated nature to be able to logically reason through, I've gotten in trouble with this before, I should not continue to do this. It goes specifically to deterrence. Is this case about the restriction on counsel's ability to speak or the judge not taking into account things the court should have considered? Both. The judge, in my opinion, was treating this like a black and white issue with no shades of gray in between. Intellectual disability is not inconsistent with malingering. It is also not inconsistent with antisocial personality disorder. Well, it seems the record is pretty clear. The court didn't entirely restrict counsel's ability to address issues of concern. The court relented, in essence, and said, counsel, spit it out. And the record goes on for pages of counsel explaining the concern that they have about intellectual deficit. In terms of mitigation, she was allowed to tell the client's story. But she wasn't allowed to rebut that notion that he had committed a fraud upon the court. And I think that was so key to the judge's decision, he imposed a sentence of 240 months. I mean, the district judge, I'm trying to think if I was, the district judge had already made that determination of the competence. Right? I mean, the district court had looked at the competing expert, not competing, the two different expert, I don't know if there was testimony or if it was reviewing the report. I don't remember. And in a sense, that was water under the bridge. Now, you know, the court had read all that material, had come to conclusions, and then argument eventually preceded, you know, defense counsel was allowed to argue. So I'm still trying to put my finger. I understand that there were certain exhibits that she didn't reference that you're suggesting she could have. Well, because it historically shows his seeing multiple health care providers and health care providers seeing the same reason. And the way in which he malingered in this case was by refusing to put forth effort in taking some tests that are designed to assess malingering. And the district court knew that one expert said malingering and the other expert said, I don't think so. She just doesn't want to engage with the process. Right? I mean, the district court knew all that, I think. It knew it in terms of the legal conclusion it made that Mr. Williams was competent to proceed forward. But the other thing I think you have to consider in this decision is any time when a judge cuts off an attorney. And this is the worst example of that that I've seen in my 30 years. There's a chilling effect on that. My nervousness here today in being late for court freaked me out, not to be too informal. This would be hard to take as a defense attorney. I thought she did a good job. I think she recovered well. I think she had exhibits, though, that she wanted to point to. But we don't know that, do we? And your opening brief doesn't say that, does it? Well, my opening brief says it's true. We can't know exactly what she would have said. But there are spots where she's being directly cut off from making the argument that he didn't pose a fraud to the court. Page 16, lines 4 through 14. Page 16, lines 17 through 21. Page 17, 16 through 23. Each instance, I think it's going directly to this notion that he's not going to let her rebut the prosecutor's argument. And then to say to the, you know, when she asked, why can't I argue, to say, well, because the prosecuting attorney won and you lost. If somebody's calling my client a fraud upon the court, that is so serious in terms of the sentence. Well, counsel, didn't they really work that whatever misunderstanding that was occurring here, wasn't that really put to rest? When the judge says, if you're going to argue about what Judge Counts did or what I did, we're done talking about that part. And counsel says, Judge, that's not at all what I was trying to say. And at that point, the court says, spit it out, Ms. Smith. Tell us what's on your mind. And then you've got eight pages of transcript of counsel making the presentation here. Eight pages reflecting family. So when the judge says, tell us what's on your mind, I mean, what more can the judge do at this point? I do want to try and reserve some time. You're hearing in those subsequent pages family history, his difficulty obtaining employment, his inability to read and write, hence the driving without a license issues. You're not hearing ways in which he did not commit a fraud upon the court. This man has not been malingering since second grade when he was labeled mental retarded and put into special education classes. Thank you. Thank you, Ms. Kurz. Mr. Wagner. Mr. Wagner. May it please the court. David Wagner on behalf of the United States. I'd like to start with the point that Judge Shepard just made a minute ago about the transcript and specifically the bottom of page 19, which is where essentially the end of this colloquy between the district court and defense counsel, where defense counsel expressed confusion and then the district court clarified that it would let her talk about Mr. Williams' cognitive issues. But if she was going to argue about what Judge Counts did or what the district court had done, they were done talking about that part. Counsel's response was, Judge, that's not at all what I was trying to say. That is defense counsel disclaiming any intent to argue, to re-argue the competency issue. Well, but that's not the argument on appeal as I take it. I mean, she doesn't want to re-argue the competency issue. She's suggesting she wasn't allowed to introduce the evidence that went in or argue based on the evidence that was at play in the competency determination. I think the argument is that counsel understood that she was barred from referencing the evidence, the expert reports, the expert testimony, whatever it was. That's the way I understand that argument. I think it's a mix of both, Judge. I think Mr. Williams has said he wanted to dispute this notion of perpetrating a fraud on the court. That's no different from malingering. Malingering is faking mental illness for purposes of secondary gain. It's the same thing. Defrauding the court and malingering, there's no daylight between the two. And that's what he says in his reply brief that he wanted to do. I wanted to dispute this notion that I was trying to defraud the court. That's the same thing as re-litigating the conclusion of malingering. To the extent what he wanted to do was point to exhibits, the district court never prevented him from doing that. The district court never said you can't talk about exhibits showing your cognitive issues. In fact, the district court said you can talk about your cognitive issues. That's why we're arguing that the standard of review here should be plain error. It's kind of part and parcel of this. The merits kind of blend into the standard of review. Because we don't know what Mr. Williams wanted to argue, he didn't tell the district court this is what I wanted to argue. That's why we're arguing the standard of review is plain error. It's really hard to evaluate whether there was any impact on the outcome of the sentencing decision when the court is left to speculate about what arguments were actually prohibited. Do you find anything problematic about the district court's statement that after allowing government counsel to argue by saying defense counsel is foreclosed and counsel says why, and the judge says because he won? No, I don't think so. I think what the district court is saying, because I previously found... Well, should the district court have shut down the government and said that's not an issue that I'm going to... Because malingering was brought up, so I'll let you answer it now. No, I think what the district court is saying is I previously made a finding of malingering, and it's fine for a party to argue based on the finding that the district court previously made, which is what government counsel was doing. What Mr. Williams seemed to want to do, at least at the beginning of his argument, although he disclaimed it later, is to want to contest the malingering finding. Those are very different things. A party should be able to say, judge, you have made this finding in this case, and it impacts sentencing in this way. A party can't say you made this finding in this case, and I want to contest that finding as purposes of sentencing. Sentencing is not the appropriate venue. Could defense counsel argue in mitigation, essentially, that whatever the finding was or wasn't, that it was not relevant in the 3553A or was less relevant than the government attorney argued in its argument? I think it would be fair to say, accepting the district court's finding, here's why we don't think it should impact the sentence, but that's not. Isn't that essentially what happened here, where counsel said, I understand, I'm not trying to relitigate that, but, and then the district court says, sit down? No, I think defense counsel was trying to relitigate the malingering finding, and I think that's borne out in the reply brief on appeal, where Mr. Williams is arguing, I should have been able to contest whether I tried to perpetrate a fraud on the court. That's just the same thing as malingering. There's no daylight between those two concepts. They're the same thing. I don't think it was inappropriate for the government attorney to say, this court's finding impacts the sentence in the following ways, and for Mr. Williams' attorney to be at least initially precluded from saying, I want to basically reopen the court's finding and argue that it shouldn't be considered for purposes of sentencing. Just real briefly on this, it kind of all blends together here, but I think the reason it's so difficult to evaluate what kind of impact any restriction the district court may have imposed had on the sentence is, it can kind of be seen by an analogy to Rule 103 of the Federal Rules of Evidence. To preserve an argument that the court should have admitted evidence, an attorney needs to basically make an offer of proof about what that evidence would be. So then on appeal, the court can know, this is what the attorney wanted to put into evidence, and we can evaluate whether it had any impact on the sentence. Essentially, that's what we're suggesting that Mr. Williams should have done here. Making an offer of proof? I get what you're saying, but I mean, my comment to co-counsel here, and it's not directly relevant, I said on the record, I thought she did a good job. I mean, she's also there trying not to, she's trying to advocate for her client at that point, and at some point, isn't a fair reading here that the judge just didn't want to hear it, and a defense lawyer at that point needs to make a judgment, well, is it going to undermine my client to continue to aggravate the district court judge or not? So I get what you're saying, but she did quite a bit of objecting, expressed confusion, made a couple attempts to try to explain what she was doing, and was shut down. I mean, I guess I agree with your comment that the merits and the standard of review kind of blend here. And it's not clear in my own mind how to separate those. Yeah, I think they're almost the same thing in my mind as well. The bottom line here, though, is I think there was just no limitation placed on defense counsel's argument. So whether you review it for plain error, whether you review it for abuse of discretion, the district court did initially admittedly push back and say, I don't want you to argue about this topic. But after this extended back and forth with defense counsel, the district court eventually said, tell us what's on your mind. And it allowed her to argue without restriction. If defense counsel had wanted, as has been suggested on appeal, to point to exhibits, nothing the district court had said restricted defense counsel from pointing to exhibits. She could have referenced or offered to admit at sentencing any exhibits that she wanted to. She simply did not do that. Well, counsel, let me ask you about something that I think is concerning, at least to me, and that's the fact that the government, in its presentation to the district court, got into the conclusion of the competency hearing and talked about the fact that Judge Counts had issued a very thorough, well-reasoned report, finding the defendant was competent. And then the government said that I was surprised that even the defense expert begrudgingly acknowledged that the BOP doctor was essentially right. Then when defense counsel began to speak, she says she takes issue with that. And she says, first, I want to state that Dr. Wichter did not agree with the doctor from the Bureau of Prisons. And she goes on to explain that. And that's where this thing kind of went into the ditch. And the court interrupted and said, listen, listen, hold on. I'm not going to litigate this thing with you. So where is the fairness in the government being able to refer to this but defense counsel not being able to respond? Well, I think the government was referring to the findings that the court had already made. And what defense counsel was trying to do was draw into question those previous findings during competency. Is it accurate that defense counsel essentially agreed that there was malingering? That the defense expert agreed that there was malingering? Absolutely. That comes from docket entry 47 at page 36. The defense expert said, and I'm quoting, I don't think that Dr. Armstrong was wrong overall. I want to state that first and foremost. I understand that his performance on testing, the malingering was blatant on his performance on her testing. However, just because someone is malingering doesn't mean that they are not intellectually disabled. So she didn't disagree that the BOP doctor had found malingering. Shouldn't counsel have been able to make that argument? Or was counsel allowed to make that argument? Was that from the argument sentencing that you were just reading? I'm sorry. That was the testimony of the defense expert. Okay. So why couldn't defense counsel make that argument in sentencing? In other words, qualifying the sort of however part of what you just said. I think she could have. I think what she had moved to do was pivoting to talking about how she didn't think the government expert's findings were supported by the record. It was directly challenging, as Judge Shepard noted, the assertion that both experts were saying the same thing. And they were kind of saying the same thing, but defense expert was saying something else. And it wouldn't have been fair, as Judge Shepard asked, to allow counsel to do that. I don't think counsel was prohibited from doing that. I think counsel started to do that. Well, she was initially. Initially, she started to make that argument. But then as I read the transcript, my recollection, I have to double check. But I recall that she started pivoting into calling into question the government expert's conclusions. In any event, she was ultimately, the district court ultimately permitted her to say whatever she wanted to say. Unless the court has further questions, I would ask the court to affirm. Thank you, Mr. Wagner. Ms. Kurz, your rebuttal will give you a full minute. Thank you. I think you're keying into a very important point. Because the way in which Mr. Williams malingered, it was two specific tests and their forced choice. It's either true or false or A or B. He randomly filled it out extremely quickly. That is the way their two experts agree, well, that's malingering because you're not putting forth enough effort, and now I can't give you an intelligence test to ascertain your IQ. His lack of sophistication and his misunderstanding as to why sentencing is important shows the defect and why it's so critical to sentencing. He didn't know enough to help himself. He insisted to the defense expert that the only way to determine whether his brain was functioning properly was to draw blood. He was confusing the need for a blood draw when you're on psychotic medication. And the district court knew all of this, right? I mean, it had heard it and reviewed it. Reviewed it. And heard some of it at sentencing. But your argument is not the full argument to defense counsel. But then, sorry, but then the judge says, but that's not what this is about. And it is about that. All of it is about that. Counsel, how do we know what defense counsel wanted to say but didn't? We don't have certainty. But there are references in the transcript. And as I was sitting down, I could not find it, where I believe she mentions the word exhibits. And she's trying to go to the exhibits. And one problem why it's so difficult to know is she couldn't get a complete sentence out before being interrupted. She wasn't even allowed to say where she was attempting to go with this. The idea that she would have been allowed to make an offer of proof. Once the court gave her permission to speak her mind, using the court's word, how do we know that she didn't do that? I don't think that the words spit it out clearly state, go ahead and go back and rebut this notion that he committed a fraud upon the court. And I keep mentioning that because the sentencing judge mentioned fraud on the court so many times. If I think it was assaulting to the court, then it played a big factor in him getting a huge variance. Thank you. Thank you, Ms. Kurz. Thank you also, Mr. Wagner. The court appreciates both counsel's participation and argument before the panel.